Date Signed:
March 22, 2022



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| In re: | Case No.: 16-01046 |
|---|---|
| | Chapter 13 |
| GEORGE MARK SAKER, | |
| Debtor. | Re: Dkt No. 133 |

### ORDER REGARDING TRUSTEE'S MOTION TO DISMISS

This dispute concerns whether and to what extent fees paid to the chapter 13 debtor's former counsel should be disgorged, when it appears that plan funding is insufficient to pay all claims that must be paid in full.

The court confirms a chapter 13 plan only if it provides for full payment of certain types of claims. These include priority claims under 11 U.S.C. § 507 and arrearages on any claim that the debtor proposes to cure. 11

1

U.S.C. §§ 1322(a)(1), (b)(5), 1325(a)(1). In this district, the requirement that the debtor pay into the plan sufficient funds to satisfy these must-pay claims in full is called the "feasibility" requirement.

The precise amount of funding needed to meet the feasibility requirement is difficult to determine when the plan is confirmed. This is because the amount of the must-pay claims can change after confirmation.

One of the priority claims that must be paid in full but is hard to predict is the chapter 13 trustee's fee. 11 U.S.C. §§ 507(a)(2), 503(b)(2), 330(a)(1). That fee is based on a percentage of each dollar that the debtor pays into the plan. The percentage is set at a rate that funds the trustee a prescribed salary, provides the cash value of certain employee benefits, and pay for approved office expenses. This fee is capped at ten percent. 28 U.S.C. § 586(e). The percentage varies from time to time because the trustee's total receipts vary: for example, if the trustee's receipts increase, a 10% fee might produce more money than is needed to pay the required compensation and reimbursement. This variation means that the plan funding required to meet the feasibility requirement also varies.

U.S. Bankruptcy Court - Hawaii   #16-01046   Dkt # 150   Filed 03/22/22   Page 2 of 13

Court-approved fees for the debtor's counsel are "must-pay" claims that are also hard to predict. 11 U.S.C. §§ 507(a)(2), 503(b)(2), (a)(4)(B). These fees cannot be fixed at plan confirmation because the amount of work that debtor's counsel must perform after confirmation can vary.

Other must-pay claims can also vary after plan confirmation. For instance, the deadline to file proofs of claim often falls after the plan confirmation. Therefore, a secured creditor might file a proof of claim asserting an arrearage that is larger than the debtor expected. Similarly, the extended deadline for governmental entities to file proofs of claim usually falls after the plan has been confirmed. Taxing authorities sometimes file claims that are also larger than the debtor estimated.

This case exemplifies the difficulty of assessing feasibility at the time of plan confirmation.

Mr. Saker's confirmed plan of April 4, 2017 (ECF 50) provided for a total funding of $80,375.00 (plus any nonexempt tax refunds). This was sufficient to pay the must-pay claims known at that time, which included: the trustee's fee (capped at 10%, or $8,037.50); the unpaid fees owed to

3

debtor's counsel ($3,183.00); and state and federal taxes (estimated at $6,000 and $62,947.20, respectively). The plan represented that Mr. Saker's mortgage payments were current on the petition date, so no cure payments were required.

Initially, the funding situation improved, because the state and federal taxing authorities filed smaller priority claims than expected ($0.00 and $61,439.72, respectively, ECF 53).

However, in January 2017, before the plan was confirmed, Mr. Saker stopped making his post-petition mortgage payments. This triggered the mortgage lender to file a motion for relief from the automatic stay (ECF 54). In addition, in or around July 2017, Mr. Saker also fell behind on his plan payments and the trustee moved to dismiss the case (ECF 67).

To address this situation, Mr. Saker's former counsel filed a response to the lender's motion and filed a motion to modify the plan (ECF 69). The proposed modification restructured the plan payments and reduced the total plan funding to $73,200 (plus tax refunds). The trustee objected to the modification on the grounds that Mr. Saker was already in default under the

4

new proposed payment schedule and because he had not fulfilled his plan obligation to submit a required tax return to the trustee. The trustee did not, however, object that the new proposed plan funding was insufficient to pay the must-pay claims. In fact, the trustee later withdrew his objection to the modified plan along with his motion to dismiss. The court approved the plan modification on April 3, 2018 (ECF 83).

Mr. Saker's former counsel filed an application for $5,165.82 of additional fees and expenses (ECF 86). The application said that "Debtor's counsel seeks an award of fees & costs only to the extent funds are available under the plan. Dividend to unsecured creditors remains at close to 0%." This was a shorthand way of saying that it was not clear that the plan funding was sufficient to cover all of the must-pay claims plus the additional fees, and that if there was a shortfall, the approved additional fees would be reduced accordingly. No one objected to the application and the court granted it on May 22, 2018 ("Fee Order 1," ECF 91). Fee Order 1 provides that the allowed fees would be "payable upon entry of this order from funds held by the trustee or through the Chapter 13 plan, to the extent available."

5

This cryptic provision means the same thing as the proviso in the application: the fees would be paid only to the extent that the trustee had money left over after paying all other must-pay claims in full.

But for the proviso, Fee Order 1 would have rendered the plan funding insufficient to cover all must-pay claims. Total plan funding was $73,200, while must-pay claims were $7,320 of capped trustee's fees, $61,439.72 of priority federal tax claims, and $8,348.82 of attorneys' fees, for total must-pay claims of $77,108.54.

Mr. Saker's problems grew worse. To address his post-petition mortgage defaults, he agreed to make extra catch-up payments to the lender of about $2,000 per month (ECF 97). At about that time, Mr. Saker stopped making his plan payments to the trustee, so the trustee filed a new motion to dismiss the case (ECF 99). Fortunately, Mr. Saker was able to cure his plan default, and the trustee withdrew the motion (ECF 101).

A few months later, Mr. Saker retained new counsel (ECF 105). He was able to negotiate a modification of his mortgage loan that added the postpetition arrearage to the loan balance and reduced his monthly

U.S. Bankruptcy Court - Hawaii   #16-01046   Dkt # 150   Filed 03/22/22   Page 6 of 13

mortgage payment (ECF 108). The trustee initially objected to the modification because Mr. Saker had fallen behind on plan payments again, but that problem was evidently resolved and the court approved the loan modification (ECF 117).

Mr. Saker's former counsel then filed a second application for additional fees and expenses of $3,159.52 (ECF 124). This application included a different feasibility proviso: it said that the allowed fees and expenses were "to be paid in full ahead of all remaining allowed claims except for adequate protections [sic] payments and Trustee's Fees. Any unpaid portion of the award is subject to discharge under 11 USC § 1328." No one objected to the application despite the fact that the plan funding was insufficient even before the additional fees were allowed.

The court approved the application on September 2, 2020. This order ("Fee Order 2") included the following proviso: "Total award as follows: $3,159.52, to be paid as a 11 USC § 507(a)(2) administrative claim; balance of award ($0.00) to be paid in full, to the extent funds are available, after payment of all administrative, secured (through plan), priority and special

7

class unsecured claims are paid in full. Any unpaid portion of the award is subject to discharge under 11 USC § 1328." (ECF 127.)

At this point, the plan funding had increased to $75,116 because the debtor had paid certain tax refunds over to the trustee as the plan required. But plan funding was still insufficient to pay all must-pay claims, and the allowance of the additional fees worsened the problem.

No one did anything about the funding problem until a year later, when the new chapter 13 trustee filed a motion to dismiss the case based on infeasibility (ECF 133). The trustee calculated that the plan funding was short by $4,500.01 (the unpaid balance of the IRS priority claim in the amount of $4,050.01 plus the trustee's fee at ten percent).

The debtor objected to dismissal, arguing that the prior chapter 13 trustee had caused the shortfall by paying too much to the debtor's prior counsel, contrary to the provisos in the compensation orders (ECF 134). At the continued hearing held on February 22, 2022, I permitted further briefing and took the matter under advisement.

Everyone agrees that Mr. Saker's prior counsel must return some of the

U.S. Bankruptcy Court - Hawaii   #16-01046   Dkt # 150   Filed  03/22/22   Page 8 of 13

money the trustee paid, based on the feasibility requirement and the provisos in the compensation orders.[1] But they disagree about the amount.

The trustee calculates that, when the court entered Fee Order 1 in May 2018, only $2,139.21 of plan funding remained available after payment of other must-pay claims, including the trustee's fee at ten percent. He therefore argues that prior counsel should be required to return $3,026.60. He acknowledges, however, that the actual trustee's fee since May 2018 has often been less than ten percent; indeed, for one year the fee was only one percent. Calculating feasibility based on the trustee's actual fee would require prior counsel to return $1,388.49. He argues that feasibility calculations should always be based on the ten percent rate because the trustee's actual percentage is unpredictable and "feasibility of a plan rests on its ability to withstand variations of up to 10% in trustee fees." (ECF 144 at 2).

I agree that, when feasibility is evaluated prospectively, the ten percent

---

[1] All parties assume the failure of a plan to provide enough funding to cover must-pay claims is "cause" for dismissal of a chapter 13 case under section 1307(c). For purposes of this decision, I accept the assumption.

U.S. Bankruptcy Court - Hawaii   #16-01046   Dkt # 150   Filed  03/22/22   Page 9 of 13

rate should be used. When evaluated prospectively, feasibility should be based on a worst-case scenario. But in this case no prospective calculation is needed. The debtor has completed all plan payments, so we can evaluate feasibility retrospectively. Therefore, using the trustee's actual fee makes sense. Using the maximum percentage would simply produce a windfall for the U.S. Treasury. (If the fee collected exceeds the trustee's salary, benefits, and overhead, the surplus is transferred to the Treasury per 28 U.S.C. § 586(e)(2).)

Mr. Saker's prior counsel argues that it should be required to return only $1,388.49, which it calculates as the amount of the insufficiency in plan funding as of the entry of Fee Order 1, applying the trustee's actual fee percentage. Prior counsel argues that the fees allowed in Fee Order 1 are adjustable based on the proviso contained in that order, but not for Fee Order 2 because the proviso in that order is different.

Mr. Saker's current counsel argues that the plan was infeasible when the court entered both fee orders. He argues that prior counsel should be required to return enough money to pay the remaining balance of the

priority tax claim ($4,050.01). (ECF 146.)

The problem in this case stems from the fact that the prior chapter 13 trustee, Mr. Saker's former counsel, and Mr. Saker's current counsel all failed to call out the fact that Fee Order 2 made the plan infeasible. Also, neither the chapter 13 trustee, nor the debtor's current counsel, nor the court noticed the difference between the provisos in Fee Order 1 and Fee Order 2. (Mr. Saker's former counsel drafted both orders and presumably changed the proviso to protect their interests.)

I reluctantly conclude that the position of Mr. Saker's former counsel is legally correct. The proviso in Fee Order 1 permits adjustment of the fees to bring the plan into compliance with the feasibility requirement. But the different proviso in Fee Order 2 does not permit that adjustment, and no one has identified any legal basis on which I could modify or disregard that final order.

I reach this conclusion reluctantly because its consequences will fall on Mr. Saker, and he was the person least able to identify and address the problem in advance. If he wants to free himself of his nondischargeable tax

11

debts and cure his mortgage defaults, he will have to pay more to the trustee. But the typical consumer debtor will not understand the feasibility issue and will not have the information required to determine whether the problem exists.

Because of this injustice, I conclude that cause for dismissal of this case does not exist. Mr. Saker has done everything that his plan requires. Some of the professionals in this case are more to blame than him for the fact that about $2,700.00 of his nondischargeable federal taxes have not been paid. Dismissal of the case would deprive Mr. Saker of a discharge of his *other* debts, even though Mr. Saker has paid his plan in full. Holding that the feasibility problem justifies dismissal of this case would require Mr. Saker to pay, not just the $2,700.00 of taxes, but also the trustee's fee on that amount, as a condition to receiving a discharge of his other debts. Requiring Mr. Saker to pay the percentage fee would be unfair considering that the bankruptcy system has partly failed him.

Mr. Saker's current counsel also requests that the court require prior counsel to pay the attorneys' fees incurred by current counsel in connection

U.S. Bankruptcy Court - Hawaii   #16-01046   Dkt # 150   Filed  03/22/22   Page 12 of 13

with this dispute. Current counsel offers no authority for this request, and I am aware of no basis for an exception to the American rule requiring each party to bear its own attorneys' fees and costs.

Therefore, it is hereby ordered that: (1) the trustee's motion to dismiss is DENIED; (2) within fourteen days from the entry of this order, the debtor's prior counsel, Abelmann Peterson LLLC, must pay to the trustee $1,388.49; and (3) the trustee shall conclude this case in the usual fashion.

**END OF ORDER**